[No. B218133. Second Dist., Div. Two. July 23, 2010.]

DAN MARISCAL, Plaintiff and Appellant, v.
LOS ANGELES CITY EMPLOYEE RELATIONS BOARD, Defendant;
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 721, Real
Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, only the Background, part II. of the Discussion, and the Disposition are certified for publication.

**COUNSEL**

Dan Mariscal, in pro. per., for Plaintiff and Appellant.

Weinberg, Roger & Rosenfeld, James Rutkowski, Alan Crowley; and Robert Hunt for Real Party in Interest and Respondent.

**OPINION**

**CHAVEZ, J.**—Plaintiff and appellant Dan Mariscal (Mariscal) appeals from the trial court's denial of his petition for writ of mandate challenging an administrative decision rendered by defendant Employee Relations Board (ERB) for the City of Los Angeles (City) recognizing real party in interest and respondent Service Employees International Union, Local 721 (Local 721) as the exclusive bargaining representative for certain City employees. We affirm the judgment.

## BACKGROUND

Mariscal is a City employee and a member of the Service Employees International Union, Local 347 (Local 347), the former exclusive bargaining representative for approximately 9,000 City employees. The Service Employees

International Union, AFL-CIO, CFC (SEIU) is an international union comprising local unions chartered by it to represent workers in various labor relations matters. Local 347 was chartered by the SEIU in 1962. Local 721 was chartered by the SEIU in January 2007.

In January 2006, the SEIU sent notice to its local unions in California that it would conduct hearings to consider restructuring and consolidating numerous local unions, including local unions whose membership consisted primarily of local or state government workers. Hearings on the proposed restructuring and consolidation of the local unions were held throughout the state from February 2006 through April 2006 before two hearing officers appointed by the SEIU executive committee. Two hearing days in Los Angeles were devoted to the local and state government worker unions. Affected local union members were given the opportunity to be heard during the hearings and to submit any documents they wished to have considered by the hearing officers. Some members of Local 347 spoke in opposition to the merger, but the executive board for Local 347 did not take a formal position on the proposed merger before or during the hearings. At the conclusion of the hearings, the hearing officers submitted a report recommending that Local 347 be combined with Locals 535, 620, 660, 998, and 1997 to form a new regional local union, Local 721, that would represent local government workers in several counties.

In June 2006, the SEIU international executive board (IEB) adopted the hearing officers' report and recommendations. SEIU's international president, Andrew Stern (Stern), provided the affected local unions with a summary that included the recommended reorganization of Local 347 into a larger regional local union. The IEB also adopted an official policy on implementation that stated: "All Local Unions are bound to comply with the decision of the IEB, which is the highest decision-making body in the SEIU between conventions." The implementation policy prohibited the use of local union funds, resources, and staff to oppose the IEB's decision regarding the merger.

The IEB also held a statewide vote of the affected members changing their local union affiliation. A statewide vote was conducted because the proposed merger would effect changes in several local unions, and those changes were interrelated. Before the statewide balloting occurred, the SEIU held a series of informational meetings. The meetings in the Los Angeles area consisted of a presentation by an SEIU official, a question and answer period, and the opportunity for discussion and debate. The statewide balloting was conducted by mail, on a confidential basis, over a four-week period beginning in September 2006. More than 100,000 California SEIU members were eligible to vote. The SEIU appointed an independent election officer to supervise the election, and the officer certified that the reorganization plan was approved with 31,408 voting in favor, and 4,256 voting against the plan.

In October 2006, SEIU president Stern notified the affected local unions that a statewide planning committee had been appointed for the public sector local unions involved in the reorganization. Local 347 president Bob Schoonover (Schoonover) was appointed to the planning committee, which was charged with developing recommendations for an interim governing structure and other transitional issues. Regional workgroups were also established to begin planning for governance, member involvement, political action, and representation.

In January 2007, Stern issued a charter to Local 721, appointed interim officers, and provided a temporary constitution. Stern appointed Local 347 executive board member Schoonover as vice-president and Local 347 board member Cheryl Elam to the Local 721 interim board. Stern directed the affected local unions to take all necessary steps to transition their members into the new union, including obtaining recognition from their respective employers. Local 347 sent a memorandum advising its members about the transition into the newly created Local 721 and assuring its members that they would continue to be represented.

In February 2007, Local 721 filed a petition for an amended certification with the ERB, seeking a name change from SEIU Local 347 to SEIU Local 721. Mariscal opposed the petition, arguing that the members of Local 347 were entitled to vote separately on whether they should merge with the other local unions into Local 721. Mariscal further argued that the reorganization significantly changed the way that Local 347 conducted its business and raised questions concerning representation.

A three-day evidentiary hearing on the matter was held in August 2007 before a hearing officer appointed by the ERB. Counsel for Local 721 argued that the SEIU had accorded the affected local union members adequate due process safeguards and the opportunity to be heard, and that the merger did not give rise to any questions concerning member representation. Mariscal argued that the reorganization resulted in a significant weakening of the Local 347 members, with a negative impact on their ability to elect leaders and to decide on disbursements of dues money. Mariscal further argued that the reorganization was effected in a manner that was inconsistent with ERB's own procedures and deprived Local 347 members of their due process rights.

At the conclusion of the hearing, both parties filed written briefs, and the matter was taken under submission. In a written decision issued in March 2008, the hearing officer recommended that the ERB approve the petition for an amended certification, changing the name of the certified representative from SEIU Local 347 to SEIU Local 721. The hearing officer found that local union members were accorded ample notice and opportunity to be heard in

advance of the proposed merger, that prohibiting the use of Local 347 staff and funds to campaign in opposition to the merger did not deprive members of their due process rights, and that the merger did not create a question concerning representation. On April 28, 2008, the ERB adopted the hearing officer's recommendation and approved the petition to recognize SEIU Local 721 as the authorized employee organization for the consolidated local unions, including Local 347.

Mariscal petitioned for administrative mandamus, seeking to reverse the ERB's decision. At a June 22, 2009 hearing on the matter, the trial court denied the petition. Judgment was entered on July 23, 2009. This appeal followed.

## DISCUSSION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.  *The trial court did not apply the Corporations Code**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.  *A separate vote by the affected local bargaining units was not required*

There is no authority to support Mariscal's argument that a separate vote by the members of Local 347 was required to effect the merger into Local 721.

A.  *The applicable governing documents do not require a separate vote for mergers or consolidations of local unions*

The SEIU constitution and bylaws expressly authorize the consolidation or merger of existing local unions.[1] Article XIV, section 3 of the SEIU constitution provides: "The International Executive Board may consolidate or merge existing Local Unions under such terms and conditions as the International Executive Board may determine when in the opinion of the International

---

*See footnote, *ante*, page 164.

[1] The constitution and bylaws of Local 347 are subordinate to the constitution and bylaws of the SEIU. Article XX, section 3 of the Local 347 constitution and bylaws states: "The Constitution and Bylaws of this Union shall at all times be subordinate to the International Constitution and Bylaws as amended. If any conflict should arise between the Constitution and Bylaws of this Union, or any amendments thereto, the provisions of the International Constitution and Bylaws shall prevail."

Executive Board the interests and welfare of the International Union and the membership thereof will be better served by such action."

Article XIV, section 4 of the SEIU constitution states: "Such merger or consolidation of existing Local Unions shall be conditioned upon the consent of the Local Unions or shall be effectuated after a hearing upon reasonable notice before the International Executive Board or a hearing officer or officers (who need not be a member or members of this organization) designated by the International Executive Board."

Nowhere in the SEIU constitution does it state that a merger or consolidation of an existing local union is contingent upon a separately tallied vote of the local union's membership.

The merger was effected in accordance with the SEIU constitution. Before the merger occurred, the SEIU conducted a series of statewide hearings on the matter before two hearing officers appointed by the SEIU executive committee. Local union members were invited to submit written materials to the hearing officers or to post comments via the SEIU Web site, and were accorded the opportunity to be heard during the hearings. At the conclusion of the hearings, the hearing officers recommended consolidating and merging public sector local unions on a geographic basis. Thereafter, affected local union members were also accorded the opportunity to vote, on a statewide basis, on the proposed consolidation and merger of the local unions. The consolidation and merger of Local 347 and the other affected local unions was effected in accordance with the SEIU governing documents, and those documents did not require a separately tallied vote of local union members in order to effect the merger.

B. *A separate vote was not required under applicable law*

1. *The applicable law*

■ The instant dispute is governed by the Meyers-Milias-Brown Act, Government Code section 3500 et seq. (MMBA), which applies to all local government employees in California. (*Vernon Fire Fighters v. City of Vernon* (1980) 107 Cal.App.3d 802, 812 [165 Cal.Rptr. 908].) Both the statutory language and intent of the MMBA provide "strong protection for the right of employees to be represented by unions of their own choosing." (*International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 202, fn. 12 [193 Cal.Rptr. 518, 666 P.2d 960] (*Gridley*).)

■ Section 3507, subdivision (a) of the Government Code authorizes public agencies to adopt rules and regulations to implement the provisions of

the statute, and the City has adopted an employee relations ordinance (ERO) for this purpose. (§ 3509, subd. (d).) The City's ERO expressly grants to the ERB the power to determine issues affecting the recognition status of employee organizations, including issues involved in a merger, amalgamation, or transfer of jurisdiction between two or more qualified employee organizations. (L.A. Admin. Code, § 4.810, subd. f.(7).) In addition, Section 3509, subdivision (d) of the Government Code grants to the City's ERB "the power and responsibility to take actions on recognition, unit determinations, elections and all unfair practices, and to issue determinations and orders as the employee relations commissions deem necessary, consistent with and pursuant to the policies of this chapter."

The ERO accordingly allows a union that has been certified as the exclusive bargaining representative for a given bargaining unit to merge or affiliate with another qualified employee organization. In determining whether the successor organization resulting from such a merger or affiliation is a continuation of the old union under a new name or is a substantially different organization requiring a vote of the affected unit members, California courts have frequently looked to federal case law for guidance. (See *North San Diego County Transit Development Bd. v. Vial* (1981) 117 Cal.App.3d 27, 31–35 [172 Cal.Rptr. 440] [holding that continuity of representation was the appropriate federal standard to be applied in determining whether an election was required to determine whether the merger of two unions created a "question of representation"]; see also *Service Employees Internat. Union v. Superior Court* (2001) 89 Cal.App.4th 1390, 1394 [108 Cal.Rptr.2d 505]; *Gridley, supra,* 34 Cal.3d at pp. 202–203; see also Grodin, *Author's Comments to Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1999) 50 Hastings L.J. 761, 762–763.) In assessing Mariscal's claim that the ERB's certification of Local 721 as the exclusive bargaining representative for the members of Local 347 required a separate vote by Local 347 members under the MMBA, we may therefore turn to analogous federal authority for guidance.

Under federal law, a certified union must be recognized as the exclusive bargaining representative of all employees in the bargaining unit, and that recognition cannot be discontinued unless its affiliation or merger with another union raises a question of representation. (29 U.S.C. § 159(c); *CPS Chemical Co. v. National Labor Relations Bd.* (3d Cir. 1998) 160 F.3d 150, 155 (*CPS Chemical*).) If the affiliation raises a question of representation, a representation election must be held to decide whether the certified union is still the choice of a majority of the bargaining unit.[2] (*CPS Chemical,*

---

[2] During oral argument, Mariscal cited Government Code section 3507.1 and section 4.822, subdivision c of the ERO as support for his argument that a majority vote by the employees of Local 347 was required in order to effect the merger of Local 347 into Local 721. Those

*supra*, at p. 155.) Such an election must be held if (1) the affected employees did not have a fair opportunity, with appropriate due process safeguards, to approve the organizational change, or (2) the affiliation substantially changed the nature of the preaffiliation union. (*NLRB v. Financial Institution Employees* (1986) 475 U.S. 192, 199–200 [89 L.Ed.2d 151, 106 S.Ct. 1007] (*SeaFirst*); *Sullivan Brothers Printers v. National Labor Relations Bd.* (1st Cir. 1996) 99 F.3d 1217, 1223 (*Sullivan Bros.*).)

■ In *SeaFirst*, the United States Supreme Court held that a question of representation arises only if the new affiliation "substantially change[s] a certified union's relationship with the employees it represents" and the change makes it "unclear whether a majority of employees continue to support the reorganized union." (*SeaFirst, supra*, 475 U.S. at p. 202.) A totality of circumstances analysis is used to determine whether there has been substantial change in a union following affiliation. (*CPS Chemical, supra*, 160 F.3d at p. 156; *Sullivan Bros., supra*, 99 F.3d at p. 1223.) The specific factors considered may differ in each case, and courts typically defer to the NLRB's (National Labor Relations Board) choice and evaluation of these factors so long as the focus remains on whether a "question of representation" exists and the board's application of the factors is not arbitrary and capricious. (*CPS Chemical, supra*, 160 F.2d at p. 156; *Sullivan Bros., supra*, 99 F.3d at p. 1223.)

■ In the instant case, the ERB found that the affected local union members were accorded a fair opportunity, with appropriate due process safeguards, to approve the proposed consolidation and merger and that the merger did not effect organizational changes so great as to present a question of representation. Substantial evidence supports those findings.

### 2. *Due process requirements were satisfied*

The administrative record shows that local members, including the members of Local 347, had ample opportunity to consider, discuss, and approve the proposed reorganization. Statewide hearings on the proposed merger were held over a two-month period. Local union leaders and union members were invited to submit written materials to the hearing officers or to post comments on the SEIU Web site and were given the opportunity to be heard during the hearings. After the hearings were concluded, the SEIU conducted a statewide vote on the proposed merger by the affected local union members. The voting

provisions govern the procedures to be followed in an election concerning representation and do not apply to the facts of this case, because the merger at issue raised no question of representation. Government Code section 3507.1, by its terms, applies to "*representation* elections" (italics added), and section 4.822, subdivision c of the ERO sets the procedures to be followed when conducting such elections.

period lasted approximately four weeks and was conducted by a confidential mail ballot. An independent outside consultant supervised the election, and a separate independent consultant tabulated the votes. Out of 100,000 affected local members who were eligible to vote, 31,408 voted in favor of the proposed merger and 4,256 voted against. Substantial evidence supports the ERB's conclusion that due process requirements were satisfied.

### 3. *No question of representation*

The record shows that although the merger produced certain organizational changes there was continuity of representation for the members of Local 347. After the merger, each of the affected local unions, including Local 347, retained an advisory committee responsible for setting policy and approving expenditures. The Local 347 advisory committee made several recommendations to the Local 721 executive board, and all of those recommendations were adopted. Julie Butcher, the former general manager of Local 347 became the regional director of the region encompassing the City. Ms. Butcher testified that her duties as regional director were generally the same as her duties as the general manager of Local 347. Labor relations policies and practices were largely unchanged by the reorganization of Local 347 into Local 721. Grievance handling procedures remained the same, and various joint labor management committees initiated by Local 347 with its employers continued to function under Local 721. Local 347 members continued to have the right to suggest collective bargaining negotiation proposals, serve on the negotiation team, elect members of the negotiation team, ensure that the negotiation team has the authority to make strategic decisions, and to ratify any tentative agreement reached with the City. Substantial evidence supports the ERB's finding that the merger did not result in a substantial change in the nature of Local 347 so as to present a "question of representation."

Mariscal claims there was conflicting evidence as to which entity, Local 347 or Local 721, was actually representing City employees prior to the ERB's May 27, 2008 decision and order recognizing Local 721 as the exclusive bargaining representative for the members of former Local 347, and that this conflict gave rise to a question of representation. The record shows that after the statewide election approving the consolidation and merger of the affected local unions, including Local 347, SEIU executives and local union leaders began implementing plans for transitioning governance, organization, member involvement, political action, and representation to Local 721. These transitional activities did not present a question of representation.

III.  *Mariscal was not denied a fair administrative hearing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

---

*See footnote, *ante*, page 164.